IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MELVIN S. BROWN, JR., | ) |
| Plaintiff, | ) |
| v. | ) No. 3:15-cv-01434 |
| THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, | ) |
| Defendant. | ) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Metropolitan Government of Nashville and Davidson County's Motion for Summary Judgment, filed on December 30, 2016. (ECF No. 19.) For the reasons stated below, the Court GRANTS the Motion for Summary Judgment.

**I.    BACKGROUND**

Plaintiff Melvin S. Brown, Jr. was hired by the Metro Nashville Police Department (MNPD) in 1984 and promoted to the rank of Lieutenant on July 2, 1998. (ECF No. 1 at PageID 2; ECF No. 20 at PageID 176; ECF No. 31 at PageID 552.) In January 2014, Lieutenant Brown was working as a Shift Commander for the Central Patrol Precinct. (ECF No. 19-1 at PageID 66; ECF No. 20 at PageID 176.) Lieutenant Brown received a use of force report (MNPD 108 Form) and associated video documenting an arrest performed by Officer Byron DeWalt in December 2013. (ECF No. 19-1 at PageID 78; ECF No. 20 at PageID 177; ECF No. 31 at PageID 551; ECF No. 30-5 at PageID 377.) The report had already been signed and approved by Sergeant Brian Brown, who had been promoted to the rank of Sergeant approximately a year and

1

a half prior to the incident. (ECF No. 1 at PageID 2; ECF No. 20 at PageID 178; ECF No. 31 at PageID 551-52.) After signing and approving the report, Sergeant Brown had submitted the report to Lieutenant Warren McConkey for review and approval. (ECF No. 19-1 at PageID 78; ECF No. 20 at PageID 178.) Lieutenant McConkey had reviewed the report, but had been transferred to a different precinct before he was able to sign the report as an approving supervisor. (ECF No. 20 at PageID 178; ECF No. 31 at PageID 552; ECF No. 30-5 at PageID 377.) As a result, the responsibility fell on Lieutenant Brown to review the use of force report. (ECF No. 30-5 at PageID 377.)

Lieutenant Brown, who was considered "an expert in use of force and taught use of force at the MPD Academy," reviewed the use of force report and the associated video. (ECF No. 31 at PageID 552; ECF No. 34 at PageID 587.) Lieutenant Brown signed the use of force report as an approving supervisor without making any comments or notations of any concerns about the use of force. (ECF No. 31 at PageID 551, 552-53.) Lieutenant Brown then submitted the use of force report to his supervisor, Commander Jason Reinbold. (ECF No. 19-1 at PageID 78; ECF No. 20 at PageID 178.) The matter was ultimately referred to the Office of Professional Accountability (OPA) within the MNPD. (ECF No. 31 at PageID 556.)

OPA Lieutenant Jerry Hertenstein performed an investigation of the incident. (ECF No. 22 at PageID 222.) As part of his investigation, Lieutenant Hertenstein interviewed Lieutenant Brown on February 13, 2014. (ECF No. 22-1 at PageID 256.) During the interview, Lieutenant Brown provided Lieutenant Hertenstein with his curriculum vitae, "indicating that he had been qualified as an expert witness in the area of police use of force." (ECF No. 22 at PageID 223; ECF No. 31 at PageID 558.) Lieutenant Brown also indicated that he had watched the use of force video with Officer DeWalt's attorney after receiving a notice of complaint from the OPA,

and questioned Lieutenant Hertenstein regarding the identity of the individual bringing the policy violation charge against him. (ECF No. 22 at PageID 224; ECF No. 31 at PageID 559.) Lieutenant Hertenstein also interviewed Sergeant Brian Brown and Lieutenant McConkey. (ECF No. 22-1 at PageIDs 231, 261.) At the conclusion of his investigation, Lieutenant Hertenstein determined that Officer DeWalt had clearly violated the MNPD use of force policy. (ECF No. 22 at PageIDs 222-23.) Lieutenant Hertenstein also recommended that Sergeant Brown and Lieutenant Brown be charged with violations of MNPD policy for approving the use of force, and that Lieutenant McConkey be charged with a violation of MNPD policy for failing to note "any concerns with the use of force during his preliminary review, and [failing to bring] the very concerning video to anyone's attention up the chain of command." (ECF No. 22 at PageID 223; ECF No. 31 at PageID 557.) Lieutenant Hertenstein recommended that the policy violations be addressed through the individuals' respective chains of command. (ECF No. 31 at PageID 556.)

Chief Steve Anderson listened to the investigative interviews and reviewed the OPA investigative report. (ECF No. 24 at PageID 294; ECF No. 31 at PageID 558; ECF No. 34 at PageID 582.) Chief Anderson believed that Lieutenant Brown had exercised "poor judgment in approving and improper use of force, act[ed] in a cavalier and disrespectful manner during the investigation process, and [was continuing to] refus[e] to accept any responsibility for his decision." (ECF No. 24 at PageID 296.) Lieutenant Brown was transferred to the Warrants Division as previously planned on March 1, 2014. (ECF No. 31 at PageID 553; ECF No. 30-5 at PageID 376.) Due to his concerns regarding Lieutenant Brown's actions in approving the use of force, Chief Anderson placed restrictions on Lieutenant Brown while he was in the Warrants Division: Lieutenant Brown could not drive an MNPD vehicle, could not perform any work in the fields, could not leave the office without permission, could not perform any off-duty work,

could not perform any extra jobs, and could not work overtime on extra events. (ECF No. 34 at PageID 583-84; ECF No. 24 at PageID 295.) Due to these restrictions, Lieutenant Brown felt unable to perform his job and was concerned about a loss of income. (ECF No. 34 at PageID 590.) Lieutenant Brown does not recall Chief Anderson mentioning his age while placing work restrictions on him. (ECF No. 31 at PageID 554.) Lieutenant Brown's base pay remained the same under these restrictions, and some of the restrictions were lifted before he retired. (ECF No. 30-5 at PageIDs 388-89.) Neither Lieutenant McConkey nor Sergeant Brown received restrictions. (ECF No. 34 at PageID 584.)

Captain Randy Hickerson, Lieutenant Brown's supervisor in the Warrants Division, recommended a three-day suspension for Lieutenant Brown, which was approved by Chief Anderson. (ECF No. 31 at PageID 557; ECF No. 24 at PageID 297.) Lieutenant Brown agreed to accept a three-day suspension if his charge was revised. (ECF No. 31 at PageID 560.) Sergeant Brown's and Lieutenant McConkey's supervisors recommended two-day suspensions, but their respective counsels negotiated the recommended suspensions to one day each. (ECF No. 31 at PageID 560.) Chief Anderson also approved Sergeant Brown and Lieutenant McConkey's suspensions. (ECF No. 34 at PageID 582.) At the time the suspensions were imposed, Sergeant Brown was 36[1] years old, Lieutenant McConkey was 44 years old, and Lieutenant Brown was 57 years old. (ECF No. 34 at PageID 582.)

Lieutenant Brown was assigned to the Warrants Division until his retirement on July 1, 2014. (ECF No. 31 at PageID 553; ECF No. 30-5 at PageID 388.) Lieutenant Brown does not

---

[1] The parties incorrectly state that Sergeant Brown was 39 years old at the time the suspensions were imposed. (ECF No. 34 at PageID 582.) According to Chief Anderson's deposition, however, Sergeant Brown was born in November 1977, which would have made him 36 years old at the time the suspensions were imposed. (See ECF No. 30-10 at PageID 525.)

4

recall Captain Hickerson or the individuals who worked in the Warrants Division commenting on his age or pressuring him to retire. (ECF No. 31 at PageIDs 553-54.)

Lieutenant Brown filed a Complaint on December 4, 2015. (ECF No. 1.) In the Complaint, Lieutenant Brown contends that Chief Anderson created a hostile work environment amounting to constructive discharge (Count I) and discriminated against him based on his age in violation of the Age Discrimination in Employment Act (Count II). (Id.; ECF No. 31 at PageIDs 554-55.) Specifically, Lieutenant Brown alleges that, in imposing the work restrictions and a three-day suspension, Chief Anderson treated him differently than Sergeant Brown and Lieutenant McConkey. (ECF No. 1; ECF No. 31 at PageIDs 554-56.)

The case was reassigned to Judge McCalla in the Western District of Tennessee on December 9, 2016. (ECF No. 16.) Defendant filed a Motion for Summary Judgment on December 30, 2016. (ECF No. 19.) Plaintiff filed a response in opposition on February 7, 2017. (ECF No. 30.) Defendant filed a reply on February 10, 2017. (ECF No. 33.)

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

5

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); see also Kalich v. AT & T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

In order to "show that a fact is, or is not, genuinely disputed," both parties must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex Corp., 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire

6

record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)). "'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir. 2011) (alteration in original) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson, 477 U.S. at 251–52). Summary judgment "'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Services, LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Anderson v. Liberty Lobby, 106 S.Ct. 2505, 2510, 2514 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)).

**B. Hostile Work Environment**

7

To establish a prima facie case of hostile work environment under the Age Discrimination in Employment Act (ADEA), the plaintiff must show: (1) that he was 40 years or older at the time of the alleged harassment; (2) that he was subjected to harassment, either through words or actions, based on his age; (3) the harassment unreasonably interfered with his work performance and it created an objectively intimidating, hostile, or offensive work environment; and (4) there is some basis for liability on the part of the employer.  See Crawford v. Medina Gen. Hosp., 93 F.3d 830, 834-35 (6th Cir. 1996) (citations omitted).  The harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."  Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (internal quotation marks and citation omitted).

**C. Constructive Discharge**

A claim of constructive discharge requires the plaintiff employee to establish that he or she resigned because "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Yates v. Avco Corp., 819 F.2d 630 (6th Cir. 1987).  For a transfer to amount to a constructive discharge, "its conditions must be objectively intolerable to a reasonable person."  Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002).  An offer of "other legitimate options for continued employment with the company, even in less prestigious positions," precludes a finding of constructive discharge.  Wilson Firestone Tire & Rubber Co., 932 F.2d 510, 515 (6th Cir. 1991).  "A demotion within a company does not amount to a constructive discharge unless the proffered employment options would have been "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Id. (quoting Yates, 819 F.2d at 636-37).  A finding of constructive discharge requires an inquiry "into both the objective

8

feelings of an employee, and the intent of the employer," as well as "the reasonably foreseeable impact of its conduct on the employee." Yates, 819 F.2d at 637.

### D. Age Discrimination in Employment Act

The ADEA prohibits employers from discriminating "against any individual with respect to his terms of compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a) (1). In ADEA claims, it is the plaintiff's burden to show that "age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009); Blizzard v. Marion Technical Coll., 698 F.3d 275, 283 (6th Cir. 2012). To establish a prima facie case of age discrimination under the ADEA based on circumstantial evidence, the plaintiff must show that: (1) he was a member of the protected class, meaning he was at least 40 years old; (2) he was subjected to an adverse employment action; (3) he was qualified for the position he held; and (4) he was either replaced by a person outside the protected class or treated differently than similarly-situated individuals. See House v. Rexam Beverage Can Co., 630 F. App'x. 461, 464 (6th Cir. 2015); Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 521 (6th Cir. 2008). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse action. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). If the defendant meets this burden, the plaintiff can still survive a motion for summary judgment if he can "identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." Tennial v. United Parcel Service, Inc., 840 F.3d 292 (6th Cir. 2016).

To establish that another employee is "similarly situated," the plaintiff must demonstrate that he and the other employee are similar in "all relevant aspects," and have "engaged in acts of

comparable seriousness;" but the plaintiff and the comparator need not be identical in every way. Tennial, 840 F.3d at 304. In the age discrimination context, the similarly situated comparator must be a member of the non-protected class, that is, younger than 40 years old. See, e.g., Malloy v. Potter, 266 F. App'x 424 (6th Cir. 2008); Blume v. Potter, 289 F. App'x 99, 105 (6th Cir. 2008); Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 317 (6th Cir. 2007) (citations omitted); Wagner v. Matsushita Elec. Components Corp. of America, 93 F. App'x. 714 (6th Cir. 2004); Smith v. Tennessee Valley Authority, 924 F.2d 1059 (6th Cir. 1991) ("Smith correctly points out that those hired as ACSs are younger, as a group, than those terminated. All but two of the four men, however, were within the protected class, 40 to 70 years olds.").

The court must make an "independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee" based on the facts of the case. Id. (quoting Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)). "Factors to consider include whether the individuals dealt with the same supervisor, were subject to the same standards . . . and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Arnold v. City of Columbus, 515 F. App'x. 524, 532 (6th Cir. 2013). See, e.g., Ercegovich, 154 F.3d at 352 ("[T]o be deemed "similarly situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."); Campbell v. Hamilton County, 23 F. App'x. 318, 325 (6th Cir. 2001) (holding that differences in job title and

responsibilities, experience, and disciplinary history may establish that two employees are not similarly situated).

## III. ANALYSIS

### A. Hostile Work Environment Claim

Lieutenant Brown argues that Chief Anderson created a hostile work environment by placing work restrictions on him that interfered with his ability to perform his job. (ECF No. 30 at PageID 317 ("he could not drive a Metro vehicle; could not aid his men in the field; could not leave the office without permission; could not work overtime for MPD, could not work extra jobs.").) Essentially, Lieutenant Brown was assigned to desk duty and a three-day suspension, restrictions which Lieutenant Brown alleges created a hostile work environment. (Id.)

Lieutenant Brown's claim fails due to his lack of proof under the second prong of the prima facie case of hostile work environment, which requires the plaintiff to show that he was subjected to harassment based on his age. Lieutenant Brown has put forth no evidence that the work restrictions to which he was subjected were in any way based on his age. Lieutenant Brown admits that he does not recall Chief Anderson mentioning his age or calling him old when Chief Anderson placed work restrictions on him. (ECF No. 31 at PageID 554.) The evidence suggests that the work restrictions and three-day suspension that Lieutenant Brown received stemmed from an effort to discipline Lieutenant Brown due to Chief Anderson's belief that Lieutenant Brown had violated MNPD policy. (See ECF No. 24.) There is an absence of evidence that such actions were taken due to Lieutenant Brown's age. As such, Lieutenant

Brown cannot make out a prima facie case of hostile work environment.[2]  Defendant is granted summary judgment on Lieutenant Brown's hostile work environment claim.

B. **Constructive Discharge**

Lieutenant Brown asserts that the working conditions to which he was subjected were "so adverse that a reasonable person could not continue to subject themselves to the situation" and that his continued employment "had become intolerable."  (ECF No. 1 at PageID 5; ECF No. 30 at PageID 319.)  The work restrictions Lieutenant Brown describes, though seemingly frustrating, do not appear to have been "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Yates, 819 F.2d at 630.  Lieutenant Brown's base pay remained the same while he was under restrictions, and the restrictions were likely temporary – some of the restrictions were lifted or modified before he retired.  (ECF No. 30-10 at PageID 541; ECF No. 30-5 at PageID 388 ("after the settlement . . . the restrictions were then changed to where I could drive the car and I could go out in the field, but I couldn't work any extra jobs and I couldn't work any overtime jobs as a supervisor.").)  Additionally, it does not appear that Chief Anderson intended for the work restrictions to encourage Lieutenant Brown to retire, but rather as a disciplinary measure.  (See ECF No. 30-10 at PageIDs 539-41; ECF No. 24 at PageIDs 295-96.)  At the time Lieutenant Brown retired, a legitimate offer of continued employment was available.  Lieutenant Brown was still a Lieutenant in the Warrants Division, and the restrictions that appear to have most affected his ability to perform his job as a Lieutenant (driving a car and going into the field) had been lifted.  As a result, the Court does not

---

[2] Brown's hostile work environment claim also appears to fail on the third prong of the prima facie case as the three-day suspension and work restrictions received do not appear to have been particularly severe or degrading.  As Lieutenant Brown's claim fails on the second prong of the prima facie case, however, the Court need not reach the remaining prongs.

12

find that Lieutenant Brown was constructively discharged and grants Defendant's Motion for Summary Judgment on Count I of the Complaint.

C. **ADEA Claim**

Lieutenant Brown attempts to put forth a prima facie case of age discrimination based on circumstantial evidence, alleging that Chief Anderson treated him differently from similarly-situated individuals Sergeant Brown and Lieutenant McConkey. It is undisputed that Lieutenant Brown was over 40 years old at the time of the alleged discrimination, thus satisfying the first prong of the prima facie case of discrimination. With regards to the second prong, Defendant also does not dispute that the three-day suspension and work restrictions that Lieutenant Brown received were adverse employment actions. It is also undisputed that Lieutenant Brown was qualified for the position of Lieutenant that he held at the time of the alleged discrimination, thus satisfying the third element of the prima facie case. Lieutenant Brown is unable to show, however, that he was treated differently from similarly-situated individuals, and thus fails on the fourth prong of the prima facie case.

Lieutenant Brown asserts that he was treated differently from Sergeant Brian Brown and Lieutenant Warren McConkey, who were both younger than Brown at the time of the discipline. (ECF No. 1 at PageIDs 2, 5.) Lieutenant McConkey, however, was 44 years old at the time of the incident and is therefore not a proper comparator because he is within the protected class.[3] Sergeant Brown also fails as a proper comparator due to differences in job title, responsibilities, and experience. Sergeant Brown was lower in rank than Lieutenant Brown, and had less expertise regarding the use of force, having only been promoted to Sergeant approximately a

---

[3] Even if Lieutenant McConkey was not a member of the protected class, he is not similarly situated to Lieutenant Brown as Lieutenant McConkey did not actually approve the use of force by signing the use of force report as an approving supervisor. Additionally, Lieutenant McConkey is not alleged to have the same expertise in use of force issues as Lieutenant Brown.

year and a half prior to the incident. (ECF No. 31 at PageID 552.) Lieutenant Brown, on the other hand, had approximately 30 years of experience at the MNPD, was promoted to Lieutenant approximately 15 years prior to the incident, "was a highly decorated Patrol Lieutenant," "has taught use of force at the MPD Academy [,] and was recognized as an expert in police use of force." (ECF No. 30 at PageID 311; ECF No. 31 at PageID 552; ECF No. 24 at PageID s 295-96.) Because of these differences, no reasonable jury could find that Lieutenant Brown and Sergeant Brown are similarly situated in all relevant aspects.

Even if Lieutenant Brown was treated differently than similarly-situated individuals and thus was able to establish a prima facie case of age discrimination, Defendant has offered legitimate, nondiscriminatory reasons for its adverse actions (ECF No. 24 at PageID 296; ECF No. 20 at PageIDs 192-94),[4] and Lieutenant Brown has not put forth evidence to show that Defendant's reasons were a pretext for age discrimination. As such, the Court grants Defendant's Motion for Summary Judgment on Count II of the Complaint.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 19) on Counts I and II of the Complaint. All of Plaintiff's claims against Defendant are hereby DISMISSED with prejudice.

---

[4] Chief Anderson asserts in his declaration that he placed the restrictions on Lieutenant Brown because Lieutenant Brown, unlike Sergeant Brown or Lieutenant McConkey, was dismissive of the OPA investigative process and was considered an expert in the use of force. Chief Anderson was concerned that "his approval was a deliberate attempt to circumvent the policies of the MNPD." (ECF No. 24 at PageID 295-96.) Chief Anderson also explains that he did not feel the need to place similar restrictions on Sergeant Brown or Lieutenant McConkey because Sergeant Brown "was a relatively new sergeant with limited experience in reviewing and approving uses of force," and that Lieutenant McConkey "did not actually sign off on the use of force packet as an approving supervisor." (Id.)

It is so ordered, this 5th day of May, 2017.

                                              /s/ Jon P. McCalla
                                              JON P. MCCALLA
                                              UNITED STATES DISTRICT JUDGE